UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ABDULLAH MAHMODI, and
HUSSAIN HUSSAINI,

                                        Petitioners,                    DECISION AND ORDER

-vs-                                                                        25-CV-6762-MAV

TAMMY MARICH, *Field Office Director, Buffalo
Field Office, Enforcement and Removal Operations,
U.S. Immigration and Customs Enforcement*; *et al.,*

                                        Respondents.
_____

## INTRODUCTION

Petitioners Abdullah Mahmodi and Hussain Hussaini, Afghan nationals who entered the United States in 2023, were detained on December 1, 2025, and were transferred to the Buffalo Federal Detention Facility ("BFDF") in the custody of U.S. Immigration and Customs Enforcement ("ICE"). ECF No. 1 ¶¶ 1–4. They have filed this action pursuant to 28 U.S.C. § 2241, arguing that their continued detention without a bond hearing is a violation of the Immigration and Nationality Act ("INA") and associated regulations, as well as their respective due process rights under the Constitution. *Id.* ¶¶ 31–43.

For the reasons that follow, the petition is granted to the extent that the Court finds Petitioners are detained pursuant to 8 U.S.C. § 1226(a), and are therefore entitled to a bond hearing at the outset of detention as established by existing federal regulations. Their arguments to the contrary notwithstanding, the Court finds no Constitutional violation in Petitioners bearing the burden of proof at the initial bond hearing to demonstrate to the satisfaction of the Immigration Judge that they are not

dangers to the community or flight risks.

## BACKGROUND

Petitioner Mahmodi and his nephew, Petitioner Hussaini, are citizens of Afghanistan who arrived in the United States in December 2023. ECF No. 1 ¶ 27. They entered without inspection and were detained by Customs and Border Protection before being released on their own recognizance with a Form I-220A that stated, in pertinent part, "[i]n accordance with [8 U.S.C. § 1226] . . . you are being released on your own recognizance." *Id.* ¶¶ 27–28. Following their release, Petitioners lived and worked in Watervliet, New York until their arrest by ICE on December 1, 2025. *Id.* ¶ 29. Other than the December 1 arrest, neither Petitioner has ever been arrested or charged with a crime, and both maintained regular compliance with ICE check-in requirements. *Id.* ¶¶ 30, 64.

Petitioners filed the instant petition on December 12, 2025. *Id.* The petition sought relief for Respondents' alleged violation of the Immigration and Nationality Act and implementing regulations, the Due Process and Equal Protection Clauses of the United States Constitution, the Fourth Amendment, and the Administrative Procedures Act. *Id.* With respect to their claims under the Immigration and Nationality Act, Petitioners maintain that their detention is governed by 8 U.S.C. § 1226(a), rather than 8 U.S.C. § 1225(b)(2)(A) as Respondent maintains. *Id.* ¶ 61. This is significant, as § 1226(a) gives the Government discretion to release Petitioners on bond during their removal proceedings, whereas § 1225(b)(2)(A) provides for mandatory detention.

Among other things, Petitioners seek release unless they are afforded a bond hearing before an Immigration Judge pursuant to the relevant regulations, as well as a Temporary Restraining Order prohibiting their removal from the United States. *Id.* On December 17, 2025, the Court declined to issue a Temporary Restraining Order, but directed Respondents to show cause why Petitioners' petition should not be granted. ECF No. 2. Respondents filed their response on December 22, 2025, and Petitioners replied to that response on December 29, 2025. ECF No. 5.

## JURISDICTION

28 U.S.C. § 2241(c)(3) authorizes federal courts to grant habeas relief to prisoners or detainees who are "in custody in violation of the Constitution or laws or treaties of the United States." Federal courts retain jurisdiction under § 2241 to review purely legal statutory and constitutional claims regarding the government's detention authority, but jurisdiction does not extend to "discretionary judgment," "action," or "decision" by the Attorney General with respect to either detention or removal.[1] *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (citing, *inter alia*, *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). No such discretionary judgments, actions, or decisions are at issue here. *See, e.g., Lieogo v. Freden*, No. 6:25-CV-06615 EAW, 2025 WL 3290694, at *2–5 (W.D.N.Y. Nov. 26, 2025) (rejecting the jurisdictional defenses raised by Respondents regarding a petition involving similar issues, and explaining why 8 U.S.C. §§ 1252(e)(3), 1252(g), and 1252(b)(9) did not bar the district court's

---

[1] For instance, 8 U.S.C. § 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." Additionally, judicial review of removal orders is available only through filing a "petition for review" in a Circuit Court pursuant to 8 U.S.C. § 1252.

review of the petition).

## DISCUSSION

Although they express disagreement with the Court's prior rulings concerning similar challenges to the government policy or practice at issue in this case, Respondents acknowledge that "the common question of law between this case and those rulings, would control the result in this case should the Court adhere to its legal reasoning in those prior decisions." ECF No. 4 at 1. Specifically, Respondents cite this Court's decision in *Da Cunha v. Freden*, No. 25-CV-6532-MAV, 2025 WL 3280575 (W.D.N.Y. Nov. 25, 2025), and concede that the Court's resolution of the question in *Da Cunha* controls the results in the instant case. In that regard, Respondents state that "[s]hould the Court decide that Petitioner[s are] subject to detention under 8 U.S.C. § 1226, the appropriate remedy is to order a bond hearing with the burden of proof on Petitioners . . . ." ECF No. 4 at 2.

In reply, Petitioners note that Respondents effectively concede that the principles of *Da Cunha* direct a finding that their detention is governed by 8 U.S.C. § 1226(a), and that they are entitled to a bond hearing. ECF No. 5 at 1. They take exception, however, to Respondents' position with respect to the burden at the bond hearing. Petitioners argue instead that the Due Process Clause of the Fifth Amendment requires that Respondents bear the burden to prove continued detention is warranted, demonstrating by clear and convincing evidence that Petitioners pose a risk of flight or danger to the community. *Id.* at 2 (citing *B.S. v. Joyce*, No. 22-CV-9738 (PKC), 2023 WL 1962808 (S.D.N.Y. Feb. 13, 2023)).

Thus, to resolve the instant petition, the Court must first determine which statute governs Petitioners' detention, and – if it finds detention is governed by § 1226(a) – determine the appropriate burden of proof at the initial bond hearing.

## I. The Statute Governing Petitioners' Detention

In *Da Cunha*, we considered whether a petitioner who had been present in the country for a period of years, was not actively seeking lawful entry through inspection by an immigration officer, and was arrested on a warrant was detained under 8 U.S.C. § 1225(b)(2)(A) or 8 U.S.C. § 1226(a). We prefaced our analysis by reciting the relevant language in the statutes. *Da Cunha*, 2025 WL 3280575 at *4. Section 1225(b)(2)(A) states, in pertinent part, that:

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title [i.e., removal proceedings].

Section 1226(a) provides, in pertinent part, that:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) [mandating the detention of certain criminal aliens] and pending such decision, the Attorney General –
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on –
>
>> (A) bond of at least $1,500 with security approved by, and containing conditions described by, the Attorney General; or
>>
>> (B) conditional parole . . . .

In conclusion, we held that the petitioner was detained under 8 U.S.C.

§ 1226(a), and was therefore "entitled to a bond hearing 'at the outset of detention' as established by existing federal regulations." *Da Cunha*, 2025 WL 3280575, at *7 (quoting *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Among other things, we found that because the petitioner was "already in the country" and had been for several years, and was arrested on his way to work in Norwood, Massachusetts rather than while presenting for inspection to an immigration officer, the government had failed to demonstrate that the petitioner was "seeking admission" as required by 8 U.S.C. § 1225(b)(2)(A). *Da Cunha*, 2025 WL 3280575 at *6. Rather, § 1226(a) applied because the petitioner was arrested on a warrant and was "*already in the country* . . . ." *Id.* (quoting *Jennings*, 583 U.S. at 289) (emphasis in the original).

Given Respondents' concession that the principles of *Da Cunha* control in the instant case, the Court finds that Petitioners are detained under 8 U.S.C. § 1226(a). They have been living and working in the United States since 2024, and there is no suggestion in the papers that they were arrested while actively "seeking admission." *See Da Cunha*, 2025 WL 3280575 at *4–6. Accordingly, Petitioners are each entitled to a bond hearing "at the outset of detention" as established by existing federal regulations. *Da Cunha*, 2025 WL 3280575 at *7; 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

## II. Burden at the Initial Bond Hearing

As indicated above, the parties disagree as to the appropriate burden at Petitioners' respective initial bond hearings. Respondents maintain that "Petitioners should bear the burden of proof to show that they are neither a flight risk or a danger

to the community." ECF No. 4. They argue that this allocation of the burden respects the broad discretion granted to the Attorney General over bond decisions (*Id.* at 4); that the Supreme Court in *Jennings* held that it is "clearly contrary to § 1226(a) to require the government to bear the burden of proof to justify prolonged detention" (*Id.* at 5); and that the Second Circuit in *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) required the burden to be shifted to the government only after a finding that the detention had become prolonged (ECF No. 4 at 5*).

In reply, Petitioners maintain that the Due Process Clause of the Fifth Amendment requires that the Government bear the burden of proof by clear and convincing evidence. ECF No. 5 at 2. They argue that although § 1226(a) affords the Attorney General broad discretion, and the Supreme Court held in *Jennings* that the text of § 1226(a) does not allocate the burden of proof, "the government's application of any statute remains subject to the Constitution." *Id.* In addition, Petitioners argue that *Velasco Lopez* "did not generally hold that placing the burden on the noncitizen comported with due process," but rather declined to reach the general issue and found that, in the case before it, due process required the Government to bear the burden after detention had become prolonged. Lastly, they point to "numerous district courts" that have found that the Due Process Clause requires the government to bear the burden from the outset of proving by clear and convincing evidence that the detainee is not a flight risk or danger to the community. *Id.* at 3–4 (collecting cases).

## A. Due Process

The Due Process Clause of the Fifth Amendment of the United States

Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law . . . ." U.S. Const., Amdt. 5. In general, the function of legal process under the clause is to minimize the risk of erroneous decisions. *Addington v. Texas*, 441 U.S. 418, 425 (1979) (citations omitted). In particular, as relevant to the questions at issue in this case:

> The function of the standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication" *In re Winship*, 397 U.S. 358, 370 (1970) (Harlan, J., concurring). The standard also serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

*Addington*, 441 U.S. at 423.

"Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982). Nevertheless, the Supreme Court has consistently recognized that in the exercise of the broad power over naturalization and immigration granted to it in the Constitution, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)). As the Supreme Court has explained:

> "[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."

*Mathews*, 426 U.S. at 82 n. 17 (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–589 (1952)).

**B. Bond Hearings for Aliens Detained Pursuant to § 1226(a)**

"The Immigration and Nationality Act ('INA') has provided for discretionary detention pending removal proceedings since it was enacted in 1952." *Velasco Lopez v. Decker*, 978 F.3d at 848. The Second Circuit has observed that until the early 1990s, the Attorney General exercised his discretion under 8 U.S.C. § 1226(a) with a presumption in favor of liberty during the pendency of removal proceedings, but that this presumption shifted with the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in 1996:

> Following the enactment of IIRIRA, the Immigration and Naturalization Service ("INS")[2], not Congress, implemented new regulations that altered the standard for the initial post-arrest custody determination made by INS officials. 8 C.F.R. § 236.1(c)(2)–(8). The new regulations established a presumption of detention and placed on the arrested individual the burden of demonstrating, to the satisfaction of the arresting officer, that release would not pose a danger to property or persons and that the individual is likely to appear for any future proceedings. *See* 8 C.F.R. § 236.1(c)(8). The regulation applies only to the initial custody determination made by the arresting officer and not to immigration judges in bond hearings. However, shortly after the new regulations were implemented, the [Board of Immigration Appeals ("BIA")] began applying the rule provided in § 236.1(c)(8) for arresting officers, including the presumption of detention, to bond hearings conducted by immigration judges under § 1226(a). *Matter of Adeniji*, 22 I. & N. Dec. [1102, 1112 (BIA 1999)]; *Matter of Guerra*, 24 I. & N. Dec. [37, 38 (BIA 2006)].

*Velasco Lopez*, 978 F.3d at 849 (footnotes omitted).

---

2 The Homeland Security Act of 2002 abolished the INS and transferred its functions to the newly-created Department of Homeland Security and the organizations it oversees, such as ICE and United States Citizenship and Immigration Services. *See, e.g.,* 6 U.S.C. § 291 ("Abolishment of INS").

The BIA has described the standard that it expects Immigration Judges to use for reaching bond determinations for aliens detained pursuant to § 1226(a):

> The burden is on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond. In general, an Immigration Judge must consider whether an alien who seeks a change in custody status is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk. *Matter of Patel*, 15 I&N Dec. 666 (BIA 1976). Immigration Judges may look to a number of factors in determining whether an alien merits release from bond, as well as the amount of bond that is appropriate. These factors may include any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States. *Matter of Saelee*, 22 I&N Dec. 1258 (BIA 2000); *Matter of Drysdale*, supra, at 817; *Matter of Andrade*, 19 I&N Dec. 488 (BIA 1987).

*Matter of Guerra*, 24 I. & N. Dec. at 40.

The standard "'to the satisfaction of the Immigration Judge' . . . is more akin to a preponderance of the evidence standard than a clear and convincing standard." *Lopez v. Barr*, 458 F. Supp. 3d 171, 178 (W.D.N.Y. 2020). Further, with respect to the evidence that may be considered, the regulations provide that the Immigration Judge can consider "any information that is available . . . or that is presented to him or her" by the alien or the Government. 8 C.F.R. § 1003.19(d).

After the first bond determination by the Immigration Judge, the alien may request a subsequent bond redetermination by an Immigration Judge "upon a showing that the alien's circumstances have changed materially since the prior bond

redetermination." 8 C.F.R. § 1003.19(e). Moreover, the regulations provide that the alien may appeal the Immigration Judge's bond and custody determination to the BIA. *See* 8 C.F.R. §§ 236.1(d)(2), 1003.38. On appeal, the BIA reviews the Immigration Judge's findings of fact for clear error, and "may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges *de novo*." 8 C.F.R. § 1003.1(d)(3).

### C. *Velasco Lopez v. Decker* and Other Relevant Decisions

As both parties discussed in their papers, the Second Circuit in *Velasco Lopez* considered the process that was due to an alien detained under 8 U.S.C. § 1226(a) after he had been detained for nearly fifteen months. To determine what process the Fifth Amendment required in the petitioner's particular case, the Circuit Court applied the three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Velasco Lopez*, 978 F.3d at 851. This test requires courts to consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. *Id.* (citing *Mathews*, 424 U.S. at 335). District courts in this Circuit have observed that far from an abstract analysis of these factors, "the *Velasco Lopez* decision focused heavily on the specifics of petitioner's detention in assessing the strength of his individual interest." *Onosamba-Ohindo v. Searls*, 678 F. Supp. 3d 364, 373 (W.D.N.Y. 2023); *see also Huanga v. Decker*, 599 F. Supp. 3d 131, 140–41 (S.D.N.Y. 2022).

11

Based on its fact-specific analysis, the Second Circuit concluded that the petitioner's fifteen-month incarceration under § 1226(a), without a determination that he was a danger to the community or flight risk, violated due process. *Velasco Lopez*, 978 F.3d at 855. Accordingly, the Second Circuit found the petitioner was entitled to a bond hearing and "concluded that the district court's order requiring the Government to prove that [petitioner] is a danger to the community or a flight risk by clear and convincing evidence to justify his continued detention 'strikes a fair balance between the rights of the individual and the legitimate concerns of the state.'" *Id.* at 857 (quoting *Addington*, 441 U.S. at 431).

"Since *Velasco Lopez* was decided, district courts in this Circuit have reached conflicting interpretations of the opinion." *Huanga*, 599 F. Supp. 3d at 139. "Several courts have concluded that *Velasco Lopez* requires case-specific *Mathews* balancing to determine whether the burden of proof at a § 1226(a) hearing worked a violation of due process." *Id.* at 140 (collecting cases). Other courts have held "as a blanket rule that the Government must bear the burden of proof at § 1226(a) hearings to comport with due process." *Id.* (collecting cases). As Judge Vilardo recently noted, "numerous" district courts in the Second Circuit continue to take the latter view, finding that constitutional due process requires the government to bear the burden of proving by clear and convincing evidence that the detainee is either a danger to the community or a flight risk even at an initial bond hearing under § 1226(a). *Ortiz v. Freden*, 25-CV-960-LJV, 2025 WL 3085032, *12 (Nov. 4, 2025) (collecting cases).

Circuit Courts to have considered the appropriate burden of proof at a detained

alien's bond hearing before an Immigration Judge under § 1226(a) also appear to be split on the issue. The First Circuit has concluded that the Due Process Clause requires that the Government bear the burden of proof at the bond hearing from the outset of detention, and that "due process requires the government to either (1) prove by clear and convincing evidence that [the alien] poses a danger to the community, or (2) prove by a preponderance of the evidence that she poses a flight risk." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). On the other hand, both the Third and the Fourth Circuit have stated that they "'perceive no problem with' the alien bearing the burden of proof under § 1226(a)." *Miranda v. Garland*, 34 F.4th 338, 366 (4th Cir. 2022) (quoting *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018)). Similarly, the Ninth Circuit found "the reasoning of the Third and Fourth Circuits . . . most consistent with the principles and precedents governing the constitutionality of immigration detention," and that "§ 1226(a)'s procedures satisfy due process . . . ." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205, 1214 (9th Cir. 2022).[3]  Importantly, all three Circuits that determined § 1226(a)'s procedures comported with due process declined to "foreclose all as-applied challenges to § 1226(a)'s procedures," noting that – among other issues – detention might become unreasonably prolonged. *Id.* at 1213–14 (collecting cases).

### D. The Burden of Proof in the Instant Case

The *Velasco Lopez* Court expressly stated that "[w]hile the Government's

---

[3] Though in dicta, the Eighth Circuit has also stated that "[t]he Supreme Court has never indicated the bond hearing process set forth in [§ 1226(a)] and accompanying regulations is constitutionally deficient. To the contrary, Supreme Court precedent indicates such a framework is constitutionally permissible." *Ali v. Brott*, 770 F. App'x 298, 301 (8th Cir. 2019).

interest may have initially outweighed short-term deprivation of [the petitioner]'s liberty interests, that balance shifted once his imprisonment became unduly prolonged." *Velasco Lopez*, 978 F.3d at 855. That is, the Second Circuit did not "establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden," but rather reached a case-specific conclusion following application of the three-factor *Mathews* test to the circumstances of the case. *Velasco Lopez*, 978 F.3d at 855 n. 13.

After a thorough review of Supreme Court and Second Circuit caselaw on this issue, the decisions of other district courts in this Circuit (especially within this District), and the pertinent decisions of the First, Third, Fourth, and Ninth Circuits, the Court finds the reasoning in the decisions of the Third, Fourth, and Ninth Circuit to be most consistent with the Due Process Clause and the Second Circuit's reasoning in *Velasco Lopez*. Thus, after an application of the *Mathews* three-factor test to the facts of this case, the Court finds no due process violation in Petitioners' bearing the burden at their respective initial bond hearings to demonstrate to the satisfaction of the Immigration Judge that they are neither dangers to the community nor flight risks. Nothing in this conclusion, however, should be read to restrict an alien's opportunity to raise as-applied challenges to detention under 8 U.S.C. § 1226(a) within the limits of the Court's habeas jurisdiction.

*i. First Mathews Factor: The Private Interest Affected*

With respect to the first factor of the *Mathews* test, the private interest that will be affected, the Court finds that Petitioners' affected private interest is "the most

14

significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Thus, this factor weighs in favor of Petitioner.

Nevertheless, "it is important not to overstate the strength of [Petitioners]'s showing under the first *Mathews* factor . . . ." *Rodriguez Diaz*, 53 F.4th at 1207. For one, the Supreme Court has expressed "a longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings . . . ." *Demore*, 538 U.S. at 526. Further, an analysis of the two circumstances the *Velasco Lopez* court found to be most significant in that case reveals significant differences between *Velasco Lopez* and the instant petition.

In its analysis of the first *Mathews* factor, the Second Circuit in *Velasco Lopez* examined two particular circumstances: the conditions in which the alien petitioner was detained, and the length of his detention. *Velasco Lopez*, 978 F.3d at 851–52. With respect to the conditions of the petitioner's detention, the Second Circuit noted that although the detention was not the result of criminal adjudication, petitioner was incarcerated in the Orange County Correctional Facility where he was held alongside criminally charged defendants and those serving criminal sentences. *Id.* at 851. As to the length of petitioner's detention, the Second Circuit observed that the petitioner was "incarcerated" for nearly fifteen months at the time he filed his petition. *Id.*

By contrast, Petitioners here are detained in the Buffalo Federal Detention Facility, and there is no suggestion that they are being held alongside criminally-

charged defendants or those serving criminal sentences. In addition, Petitioners were detained for less than two weeks at the time they filed their petition. The Second Circuit stated that the "the longer the duration of incarceration, the greater the deprivation," and that "where the Supreme Court has upheld detention during the pendency of removal proceedings, it has been careful to emphasize the importance of the relatively short duration of detention." *Velasco Lopez*, 978 F.3d at 852 (citing *Demore*, 538 U.S. at 529); *see also Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (finding post-removal detention to be "prolonged" after six months). Lastly, Petitioners' detention has a "definite termination point:" by statute, Petitioners may only be detained under § 1226(a) pending a decision on whether the alien is to be removed from the United States. *See, e.g., Demore,* 538 U.S. at 528 (finding it a significant due process consideration that detention under § 1226 has a "definite termination point").

While the Court does not minimize the importance and fundamental nature of the individual's right to liberty, the Court finds that due to the shorter length of their detention at the date of filing of their petition, and the absence of any allegations regarding the conditions of confinement, the first factor weighs in Petitioners' favor to a lesser extent than in the petitioner's in *Velasco Lopez*.

### ii. Second Mathews Factor: Risk of Erroneous Deprivation

With respect to the second factor of the *Mathews* test, the risk of erroneous deprivation, the Court finds this factor to be neutral at this stage of the proceedings.

The Second Circuit found in *Velasco Lopez* that "the procedures underpinning

[the petitioner]'s lengthy incarceration markedly increased the risk of error." *Velasco Lopez*, 978 F.3d at 852. Again, the considerations were specific to the petitioner's circumstances. The petitioner in that case was turned over to ICE custody after being arrested by state authorities in February 2018 on charges of aggravated unlicensed operation of a motor vehicle, driving while intoxicated, and consumption of alcohol in a motor vehicle. *Id.* at 847. At the time of his arrest, the petitioner was also subject to state charges resulting from an incident at a bar in March 2017. *Id.* At the petitioner's first bond hearing, four months after his arrest, he was unable to satisfy the Immigration Judge that he was not a danger to the community in part because ICE had declined to produce him for any state court proceedings related to the March 2017 incident. *Id.* Once ICE finally produced the petitioner in state court, the March 2017 charges were dismissed. *Id.*

Further, at the *Velasco Lopez* petitioner's second bond hearing, the Immigration Judge again denied bond, this time because the petitioner was unable to produce sufficient evidence regarding his February 2018 charges to demonstrate that he was not a danger to the community. *Id.* However, the reason the petitioner was not able to produce additional evidence was because the case on those charges could not progress in state court while he was confined in ICE custody. *Id.*

Noting the Government's "substantial resources to deploy" – including computerized databases and regulatory authority to obtain information – the Second Circuit dismissed the Government's argument that it, too, had little to no information on the detained petitioner. *Id.* at 853. The implication was that the Government's

resources could and should be brought to bear in gathering relevant information regarding the circumstances of the petitioner's criminal charges. *Id.* The Circuit Court stated both that "the longer detention lasts, the less persuasive this 'lack of information' rationale becomes," and that "'as the period of . . . confinement grows,' so do the required procedural protections [due to a detainee] no matter what level of due process may have been sufficient at the moment of initial detention.'" *Id.* (quoting *Zadvydas*, 533 U.S. at 701).

In the instant case, however, Petitioners have made no showing of any pertinent similarities of their circumstances with that of the petitioner in *Velasco Lopez*, and there is no evidence before the Court to suggest that the ample process outlined in the relevant regulations are intrinsically deficient. To begin with, once Respondents comply with the instant order, Petitioners will have received an initial bond hearing within two months of their initial detention, a full two months earlier than the initial bond hearing in *Velasco Lopez. See also Rodriguez Diaz*, 53 F.4th at 1207 (finding the petitioner's reception of an initial bond hearing within two months after he was detained a relevant consideration "diminish[ing]" the weight given to the petitioner's liberty interest). Further, neither Petitioner has a criminal record that would implicate the alleged informational disadvantage caused by the "substantial resources" Respondents may utilize to discover information. ECF No. 1 ¶ 64. Rather, both Petitioners allege close ties to the community, steady employment, and regular compliance with ICE check-in requirements. *Id.* None of these allegations suggests that Petitioners, who may be represented by counsel at the hearing, will be

unable to obtain any required information or otherwise be at an informational disadvantage to Respondents at this point in the proceeding. *See, e.g., Miranda*, 34 F.4th at 362 (finding the second factor tips in the Government's favor, in part, because aliens should know much more about their history, family, and employment that the Government, and because they have the opportunity to retain counsel to represent them before the Immigration Judge).

### iii. Third Mathews Factor: The Government's Interest in Detention

As to the third and final factor of the *Mathews* test, the government's interest in detaining Petitioner, "the Attorney General's discretion to detain individuals under 8 [ ] U.S.C. [§] 1226(a) is valid where it advances a legitimate governmental purpose . . . [such as] . . . ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Velasco Lopez*, 978 F.3d at 854. "The importance of these interests is well-established and not disputed." *Id.*

In *Velasco Lopez,* the Second Circuit concluded that the Government failed to articulate an interest in the prolonged detention of a noncitizen who was neither dangerous nor a risk of flight, and therefore that the third factor, too, weighed in favor of the petitioner. *Id.* at 855. The Circuit Court stated that "[w]hile the Government's interest may have initially outweighed short-term deprivation of [the petitioner]'s liberty interests, that balance shifted once his imprisonment became unduly prolonged." *Id.* at 855. Nevertheless, it declined "to establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden." *Id.* at 855 n. 13.

The Court does not read the Second Circuit's conclusion in this regard to suggest that the third *Mathews* factor must always weigh in favor of the petitioner. Rather, the Court reads *Velasco Lopez* "to suggest that the inverse [of the *Velasco Lopez* petitioner's case] is also true: namely, that it may not be a violation of due process for an alien to bear the burden of proof at a hearing that takes place shortly after their initial detention . . . and where a petition is filed after a relatively brief period." *Raspoutny v. Decker*, 708 F. Supp. 3d 371, 383 (S.D.N.Y. 2023) (quoting *Huanga*, 599 F. Supp. 3d at 139). That is precisely the case here. The petition was filed approximately 10 days after Petitioners' arrest, and their respective initial bond hearings, following Respondents' compliance with this order, will occur within two months of Petitioners' detention. Consequently, the Court finds that the third factor weighs in favor of the Respondents.

Having weighed all three factors, determining that the first weighs slightly in favor of Petitioners, the second is neutral, and the third weighs in favor of Respondents, the Court finds that Petitioners have failed to demonstrate that the Due Process Clause requires Respondents to bear the burden at the initial bond hearing to show by clear and convincing evidence that Petitioners are a danger to the community or a flight risk. Accordingly, the Court finds that Petitioners' initial bond hearing may proceed under the standards set forth in the relevant statutes, regulations and BIA caselaw.

## CONCLUSION

Accordingly, Petitioners' application for habeas relief [ECF No. 1] is

GRANTED to the extent that the Court finds that they are detained under 8 U.S.C. § 1226(a), and therefore that each of the Petitioners is entitled to his own initial bond hearing under the relevant regulations. It is hereby,

ORDERED that Respondents shall hold an individualized bond hearing for each of the Petitioners within ten (10) days of the date of this Order; and it is further

ORDERED that if Respondents fail to hold a bond hearing for one or both of the Petitioners within ten (10) days, the Petitioner(s) who did not receive a hearing shall be released from custody; and it is further

ORDERED that Respondents shall file a status report no later than seventeen (17) days from the date of this order confirming that Petitioners have either been granted a bond hearing within ten (10) days or released from custody in compliance with this Order; and it is further

ORDERED that, because the instant Order resolves this action, an evidentiary hearing is not warranted and the restriction on Petitioners' transfer outside of the United States is lifted.

The Clerk of Court is directed to enter judgment in favor of Petitioners and close this case.

SO ORDERED.

Dated:        January 15, 2026
              Rochester, New York

                                        ENTER:

                                        s/ Meredith A. Vacca
                                        HON. MEREDITH A. VACCA
                                        United States District Judge